UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 1:03-cr-00053-JAW |
| ) | |
| DAVID SANFORD ) | |

**ORDER ON MOTION FOR AN ORDER AUTHORIZING TWELVE OR MORE MONTHS OF RESIDENTIAL REENTRY CENTER PLACEMENT**

Even though the Court has a positive view of the efficacy of residential reentry centers in bridging the gap from federal incarceration to the freedom of society, the Court declines to grant an inmate's request for a judicial recommendation to the Bureau of Prisons to extend the Defendant's time in halfway house placement from six to twelve months. In recognition of the Bureau of Prisons' superior knowledge regarding the Defendant, the availability of halfway house placement for him, the impact of his placement on other inmates seeking similar placement, and the significance of his disciplinary record while incarcerated, the Court will not interfere with the Bureau of Prisons' assessment that six months is the proper amount of time for the Defendant to spend in a halfway house to foster his successful reentry into society.

**I.   BACKGROUND**

On August 11, 2004, the Court sentenced David Sanford to 240 months of incarceration, six years of supervised release, and a $400 special assessment for engaging in a conspiracy to commit a Hobbs Act robbery, possession of a stolen firearm, possession of a firearm by a felon and armed career criminal, and possession

of a controlled substance with intent to distribute it. *J.* (ECF No. 129). Mr. Sanford appealed his convictions and sentences to the Court of Appeals for the First Circuit and on December 28, 2005, the First Circuit affirmed both the convictions and the sentences. *United States v. Sanford*, 160 Fed. Appx. 1, 4 (1st Cir. 2005) (per curiam).

In March 2021, the Bureau of Prisons (BOP) referred Mr. Sanford for placement in a halfway house, to begin likely on March 29, 2022, six months prior to his scheduled release date of September 29, 2022.[1] *See Gov't's Resp. to Def.'s Mot. for an Order Authorizing Twelve or More Months of Residential Re-Entry Center (RRC) Placement* (*Gov't's Opp'n*), Attach. 2, *BOP Inst. Referral for CCC Placement* (ECF No. 177). On May 13, 2021, Mr. Sanford filed a pro se motion for an order authorizing residential reentry placement, seeking twelve, not six, months of residential reentry placement. *Mot. for an Order Authorizing Twelve or More Months of Residential Reentry Center (RRC) Placement* (ECF No. 175) (*Def.'s Mot.*).[2]

## II. LEGAL STANDARDS

The United States Supreme Court has written that Congress has given the BOP "plenary control, subject to statutory constraints, over 'the place of the prisoner's imprisonment.'" *Tapia v. United States*, 564 U.S. 319, 331 (2011) (quoting 18 U.S.C. § 3621(b)). Federal law permits a court to make a recommendation to the BOP, "[b]ut

---

[1] The Government provided a BOP form entitled "Sentence Monitoring, Computation Data as of 05-19-2021." *Gov't's Opp'n*, Attach 1, *Sentence Monitoring, Computation Data as of 05-19-2021* at 1. This form indicates that Mr. Sanford's home detention eligibility date is March 29, 2022 and his projected release date is September 29, 2022. *Id.* The Government also provided a BOP form entitled "Institutional Referral for CCC Placement." *Gov't's Opp'n*, Attach. 2, *Institutional Referral for CCC Placement.* This form states that Mr. Sanford's anticipated release date is September 29, 2022 but provides a recommended date of March 29, 2022. *Id.* at 1.
[2] Contemporaneous with this order, the Court is issuing an order on Mr. Sanford's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1).

decisionmaking authority rests with the BOP." *Id*. The applicable statutory provision is 18 U.S.C. § 3624(c)(1):

> [The BOP] shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

Federal law also provides that a sentencing court may make a recommendation that a prisoner serve a term of imprisonment in a residential reentry center. 18 U.S.C. § 3621(b). But the recommendation has "no binding effect." *Id*.

Some sentencing courts have issued orders recommending release into a residential reentry center. *United States v. Hoskins*, No. 3:01-cr-00266, 2018 U.S. Dist. LEXIS 56466 (M.D. Pa. Apr. 3, 2018); *United States v. Bhamani*, No. 2:10-cr-00327-TLN, 2017 UL 2992455, 2017 U.S. Dist. LEXIS 109902 (E.D. Cal. July 13, 2017); *United States v. Qadri*, No. CR-06-00469-LEK, 2017 WL 1011663, 2017 U.S. Dist. LEXIS 38716 (D. Haw. Mar. 15, 2017); *United States v. Bartels*, No. 12-cr-20072, 2016 WL 6956796, 2016 U.S. Dist. LEXIS 164056 (E.D. Mich. Nov. 29, 2016); *United States v. Brattin*, No. 2:13-cr-0161-JAD-CWH-1, 2016 WL 4467897, 2016 U.S. Dist. LEXIS 112222, (D. Nev. Aug. 23, 2016); *United States v. Baker*, No. 3:01-cr-94-01-MHT, 2013 WL 355867, 2013 U.S. Dist. LEXIS 11418 (M.D. Ala. Jan. 29, 2013). These courts have typically emphasized the defendant's post-sentencing rehabilitation, criminal record, and any recommendations from BOP personnel.

Other sentencing courts have denied similar motions. *United States v. Perry*. No. 2:13-cr-0049-TLN, 2017 U.S. Dist. LEXIS 65226 (E.D. Cal. Apr. 27, 2017); *United

3

*States v. Landers*, No. 6:09-cr-0893-10-JMC, 2013 WL 5530271, 2013 U.S. Dist. LEXIS 144450 (D.S.C. Oct. 7, 2013); *United States v. Anderson*, No. 10-20437-CR-JEM, 2012 WL 5530271, 2012 U.S. Dist. LEXIS 195841 (S.D. Fla. Aug. 1, 2012). Often the denials are based on the sentencing court's deference to the BOP's superior legal and factual position in making placement decisions, on a lack of corroborating information, and on the timing of the motion, such as a motion made too early in an inmate's sentence for a court to predict his status at the end of incarceration. *See e.g.*, *United States v. Hoskins*, No. 3:01-cr-00266, 2018 U.S. Dist. LEXIS 14474 at *6 (M.D. Pa. Jan. 30, 2018). On November 18, 2011, Judge Hornby of this District denied a similar request for judicial recommendation, concluding that there was "no reason to distinguish [the defendant] from other inmates whom the [BOP] must assign in accordance with the criteria Congress has given it." *United States v. Smith*, No. 2:10-cr-00154-JDL, *Order on Def.'s Mot. for Judicial Recommendation to BOP* at 1 (ECF No. 34) (citing 18 U.S.C. § 3621(b)).

This Court has issued four opinions on similar motions. *United States v. Sirois*, No. 1:11-cr-206-JAW, 2018 U.S. Dist. LEXIS 175207 (D. Me. Oct. 11, 2018); *United States v. Stile*, No. 1:11-cr-00185-JAW, 2018 U.S. Dist. LEXIS 150648 (D. Me. Sept. 5, 2018); *United States v. Ford*, No. 1:12-cv-00163-JAW-4, 2018 U.S. Dist. LEXIS 107304 (D. Me. June 25, 2018); *United States v. Sutherland*, No. 1:15-cv-00041-JAW, 2018 U.S. Dist. LEXIS 104596 (D. Me. June 22, 2018). It granted three and dismissed one. These motions are fact intensive. The motion the Court denied, for example, involved a defendant who lied on the witness stand in two jury trials and received an

obstruction of justice enhancement. *Ford*, 2018 U.S. Dist. LEXIS 107304, at *6-7. The Court was reluctant to accept her word about her progress in prison absent corroboration. *Id.* In the other three cases, the Court recommended to the BOP that the inmate be assigned to a residential reentry center but expressly acknowledged the BOP's greater expertise in making the ultimate decision.

### III. DISCUSSION

The primary basis for the Court's reluctance to make a recommendation to the BOP in Mr. Sanford's case is that the issue, as narrowly presented, is not whether the BOP should grant Mr. Sanford a period in a residential reentry center, but how long he should remain in the residential reentry center before being released into society. The length of time an inmate should reside in a reentry center after a period of incarceration seems to this Court to fall more squarely within the BOP's penological expertise than within this Court's judicial experience. In addition, the BOP has at all times many inmates eligible for assignment to residential reentry centers and how the BOP applies the statutory criteria of 18 U.S.C. § 3621(b) among its inmates and designates them for placement in specific residential reentry centers are matters within the BOP's institutional expertise and statutory authority.

Also, even though the Court recalls Mr. Sanford, primarily from his sentencing hearings in 2004, the Court has not seen him for over seventeen years. No doubt now at age fifty, Mr. Sanford has changed since his early thirties when he came before this Court, and the Court is uncomfortable applying its remote encounter with Mr.

Sanford to his current situation. By contrast, the BOP has been his custodian throughout this time and its knowledge of Mr. Sanford is current.

In its response to Mr. Sanford's motion, the Government filed a copy of Mr. Sanford's BOP disciplinary record. *Gov't's Opp'n*, Attach. 3, *Inmate Discipline Data* at 1-13. Mr. Sanford's disciplinary record is not clean. It begins on December 12, 2005 with use of alcohol or drugs and ends on December 4, 2020, again with use of alcohol or drugs. *Id.* The discipline record runs a little more than twelve pages. *Id.* The Court finds it difficult to evaluate the significance of Mr. Sanford's disciplinary record and its implications for his period in the residential reentry center and defers to the BOP on this issue.

In its response to Mr. Sanford's companion motion for release under 18 U.S.C. § 3582(c)(1)(A), the Government also brought to the Court's attention Mr. Sanford's long history of drug addiction and his refusal (despite three BOP offers) to engage in the BOP's 500-hour Residential Drug Abuse Program (RDAP). *Gov't's Opp'n to Def.'s Am. Mot. for Compassionate Release* at 5-7 (ECF No. 188). From the Court's viewpoint, it would be reassuring, given his acknowledged issues with addiction, if Mr. Sanford had successfully completed RDAP. Again, the BOP, not this Court, is better able to evaluate what, if anything, Mr. Sanford's decision to decline participation in RDAP means for his release to twelve-months in a residential reentry center.

Certainly, not all of Mr. Sanford's time in prison has been for naught. In 2004, Mr. Sanford struck the Court as intelligent and literate, and the Court is impressed

6

with his enrollment in courses of all types during the last nearly eight years of his period of incarceration. *Gov't's Opp'n.,* Attach. 4, *Inmate Educ. Data* at 1-2.

Finally, in his motion for compassionate release, Mr. Sanford attached a letter dated July 1, 2021 from Anthony Scibelli, Assistant Superintendent of the Western Massachusetts Recovery and Wellness Center (WMRWC) operated by the Hampden County Sheriff's Department. Mr. Scibelli indicates that WMRWC is a federal residential reentry center, that it operates treatment programs for substance abuse disorders, and that it would have a bed available for Mr. Sanford. *Def.'s Am. Mot. for Compassionate Release*, Attach. 2, *Letter from Anthony Scibelli to Hon. John A. Woodcock, Jr.* (Jul. 1, 2021)) (ECF No. 187). The Court appreciates Mr. Scibelli's offer to assist Mr. Sanford in his transition from federal prison to society. Nevertheless, in the context of this case, the WMRWC option would short-circuit the BOP process and, if the Court ordered Mr. Sanford's release to WMRWC, it would contravene the statutory authority of the BOP under § 3624(c)(1) to make the decision about where and when to place Mr. Sanford.

To place this proposal in its broader context, Mr. Sanford repeatedly declined to participate in the BOP's RDAP, which is designed for inmates with substance abuse problems nearing the end of their incarceration. The BOP has preliminarily indicated that it will assign Mr. Sanford to a residential reentry center during the last six months of his prison term. If the Court were to grant Mr. Sanford's request to be assigned to WMRWC, the net effect would be to reward him for refusing to participate in RDAP and release him earlier than BOP has planned, to a program of

7

Mr. Sanford's choosing outside of prison during the six months leading up to the point when the BOP is scheduled to release him to a residential reentry center. Section 3624(c)(1) charges the BOP, not Mr. Sanford, with the authority to decide when and where to release inmates like Mr. Sanford. The BOP's decision about when and where to release an inmate is presumably multifactorial, involving its allocation of limited resources, its responsibility to place other equally deserving inmates, and similar factors. In these circumstances, the Court will not make a recommendation to the BOP that would undercut BOP's exercise of its lawful placement authority.

This decision is not a comment on WMRWC and the quality of its program. It may turn out that the BOP elects to use WMRWC as a residential reentry center for Mr. Sanford beginning on March 29, 2022, and if so, the Court would have no objection. This order is only about who gets to decide this issue and the Court has determined it is the BOP who decides.

For reasons both statutory and practical, the Court declines to make a recommendation in Mr. Sanford's case to the BOP for a period in a residential reentry center beyond the six-month period the BOP itself has authorized. In sum, in Mr. Sanford's case, the Court concludes that the BOP is better able than the Court to assess his current suitability for a halfway house and to prioritize him for placement among its inmate population.

## IV. CONCLUSION

The Court DISMISSES without prejudice the Defendant's Motion for an Order Authorizing Twelve or More Months of Residential Reentry Center (RRC) Placement (ECF No. 175).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of September, 2021