UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:03-cr-00053-JAW |
| | ) | |
| DAVID SANFORD | ) | |

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

An inmate serving a two-hundred-forty-month sentence following convictions for Hobbs Act Robbery, possession of a stolen firearm, use of a firearm during the commission of a federal crime of violence, and possession of a controlled substance with the intent to distribute moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court dismisses the motion without prejudice because the inmate has not shown extraordinary and compelling reasons to justify his release from incarceration and the factors under 18 U.S.C. § 3553(a) do not support release.

## I.    BACKGROUND[1]

### A.    Factual Background

#### 1.    David Sanford's Convictions for Armed Robbery

On July 5, 2003, David Sanford agreed to obtain OxyContin pills from a dealer in Augusta, Maine, to sell to the mother of an acquaintance. *PSR* ¶ 3. When the buyer, suspecting that the pills were a form of Ritalin rather than OxyContin,

---

[1]    The Court draws its facts from the Revised Presentence Investigation Report (PSR) that U.S. Probation and Pretrial Services (PO) prepared in anticipation of Mr. Sanford's sentencing. *Restricted U.S. Probation Filing*, Attach. 1, *Revised Presentence Investigation Report* (ECF No. 180) (*PSR*). At Mr. Sanford's sentencing, the Court adopted the revised PSR without changes. *Restricted U.S. Probation Filing*, Attach. 2, *Statement of Reasons*, at 1.

demanded either her money back or that Mr. Sanford obtain the real thing, Mr. Sanford agreed to remedy the situation. *Id.* The next day, Mr. Sanford told a separately indicted co-conspirator, Terry Pelotte, that he could not refund the buyer but would return with Mr. Pelotte to the drug dealer in Augusta. *Id.* ¶ 4. Before going to Augusta, Mr. Sanford, Mr. Pelotte, and Mr. Sanford's girlfriend, Erin Hunter, drove to the home of Arthur Radcliffe, a blind acquaintance, where Mr. Pelotte asked to see Mr. Radcliffe's new gun under the pretense that Mr. Sanford wanted to buy it. *Id.* ¶ 5. Mr. Pelotte then took the gun and ammunition and fled the house with Mr. Sanford and Ms. Hunter. *Id.* ¶ 5.

Mr. Pelotte and Mr. Sanford test-fired the .45 caliber handgun together before the three drove to a Walmart in Skowhegan. *Id.* ¶ 6-7. Mr. Pelotte found the Walmart pharmacy closed and returned to the car. *Id.* ¶ 7. Mr. Sanford then took over driving from Ms. Hunter and parked the car instead outside a nearby Hannaford supermarket. *Id.* After Ms. Hunter alerted Mr. Pelotte that a Hannaford employee was right outside the closed pharmacy, Mr. Pelotte entered the pharmacy, revealed the stolen handgun tucked into his shorts to the employee, and demanded OxyContin. *Id.* Mr. Pelotte returned to the car with three, 100-count bottles of OxyContin. *Id.* Mr. Sanford then drove to Mr. Pelotte's mother's house, first stopping for gas, after which Ms. Hunter drove. *Id.* ¶ 8. Mr. Sanford and Ms. Hunter waited outside Mr. Pelotte's mother's house for Mr. Pelotte to change clothes and shave his face. *Id.* ¶ 8.

That night, Mr. Sanford and Ms. Hunter went to Ms. Hunter's father's house where Mr. Sanford showed the stolen handgun to Ms. Hunter's brothers and lied

about its origin. *Id.* ¶ 9. Mr. Sanford eventually hid the gun in a tree behind the house, where law enforcement later found it and identified it as the same gun stolen from Mr. Radcliffe and used in the Hannaford robbery. *Id.* ¶ 10. The Hannaford employee submitted a victim impact statement, reporting that she took a day off from work and attended counseling for about a month following the robbery. *Id.* ¶ 11.

### B.    Procedural History

On October 8, 2003, a federal grand jury issued a five-count indictment charging Mr. Sanford with Hobbs Act robbery, possession of a stolen firearm, being a felon in possession of a stolen firearm, possession of a firearm by a felon and armed career criminal, and possession with intent to distribute oxycodone, in violation of 18 U.S.C. § 1951(a), 18 U.S.C. §§ 922(j), (g)(1), 18 U.S.C. § 924(a)(2), (e), and 21 U.S.C. § 841(a)(1), (b)(1)(C). *Superseding Indictment* (ECF No. 51). On February 9, 2004, he pleaded guilty to all charges.[2] *Min. Entry* (ECF No. 107). In his plea agreement, Mr. Sanford stipulated that he qualified as an Armed Career Criminal and as a career offender. *Revised Agreement to Plead Guilty* ¶ 3(E), (F) (ECF No. 109). At the August 11, 2004 sentencing hearing, the Court made the following guideline calculations: Mr. Sanford's guideline sentence range was from 210 to 262 months, his term of supervised release was six years, he faced a fine from $17,500 to $175,000, and he was subject to a special assessment of $100 per count. *Tr. of Proceedings, Continuation of Sentencing Proceedings* at 20:21-22:21 (ECF No. 134) (*Sentencing Tr.*). The Court sentenced Mr. Sanford to two-hundred-forty months imprisonment,

---

[2]      On motion of the Government, the Court dismissed the second count of the Superseding Indictment at sentencing. *Oral Order* (ECF No. 128).

3

six years of supervised release, no fine, and a $400 special assessment. *Min. Entry* (ECF No. 126); *J.* at 2-5 (ECF No. 129).

On August 17, 2004, Mr. Sanford appealed his convictions and sentences, and on December 28, 2005, the Court of Appeals for the First Circuit affirmed both the convictions and the sentences. *J.* (ECF No. 146); *United States v. Sanford*, 160 Fed. Appx. 1, 4 (1st Cir. 2005) (per curiam).

On April 16, 2007, Mr. Sanford filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. *Sanford v. United States*, 1:07-cv-50-JAW. On July 20, 2007, the Court dismissed Mr. Sanford's motion to vacate, set aside, or correct his sentence. *Id.*, *Order on Def.'s Mot. to Dismiss Pl.'s Mot. to Vacate, Set Aside or Correct Sentence* (ECF No. 4).

Mr. Sanford's case became quiescent for over eight years. Then, on August 7, 2015, Mr. Sanford filed a pro se motion to reduce his sentence and a pro se motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. *Mot. for Reduction of Sentence Based on Newly Am. Sentencing Guidelines Pursuant to 18 U.S.C § 3582(c)(2) et seq.* (ECF 152) (*Mot. for Reduction of Sentence*); *Mot. to Vacate, Set Aside, or Correct Sentence* (ECF No. 153). As the title of the motion to reduce sentence suggests, Mr. Sanford argued that he was entitled to a reduction in his sentence due to his claim that the United States Sentencing Commission had adopted a new provision, Amendment 782, which Mr. Sanford thought was applicable to him and which he contended should reduce his sentence. *Mot. for Reduction of Sentence.*, Attach. 1, *Mem. of Points and Authorities to Move for Reduction of Sentence Based on*

*Newly Am. Sentencing Guidelines Pursuant to 18 U.S.C. § 3582(c)(1)* at 3-10.  The Court denied Mr. Sanford's motion to reduce his sentence because the Court concluded that Amendment 782 would not have affected his guideline range.  *Status Order* (ECF No. 169).  After the Magistrate Judge stayed his second § 2255 petition to allow Mr. Sanford to obtain First Circuit approval of his second or successive petition, the First Circuit dismissed his § 2255 petition based on an agreement of the parties and on May 4, 2016, this Court similarly granted a joint motion to dismiss Mr. Sanford's § 2255 petition because the Court of Appeals had not granted his successive petition and this Court did not have jurisdiction to entertain his petition. *Id.*; *Order Regarding Mot. for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2)* (ECF No. 173); *Am. Order on Second Mot. to Reduce Sentence* (ECF No. 174).

In March 2021, the Bureau of Prisons (BOP) referred Mr. Sanford for placement in a halfway house, to begin likely on March 29, 2022, six months prior to his scheduled release date of September 29, 2022.  *Gov't Resp. to Def.'s Mot. for an Order Authorizing Twelve or More Months of Residential Re-Entry Center (RRC) Placement*, Attach. 2, *BOP Inst. Referral for CCC Placement* (ECF No. 177).  On May 13, 2021, Mr. Sanford filed a pro se motion for an order authorizing residential reentry placement, seeking twelve, not six, months of residential reentry placement. *Mot. for an Order Authorizing Twelve or More Months of Residential Reentry Center (RRC) Placement* (ECF No. 175).[3]

---

[3]     Contemporaneous with this order, the Court is issuing an order on Mr. Sanford's pro se motion for residential reentry placement.

On May 24, 2021, Mr. Sanford filed a pro se motion for compassionate release, citing the First Step Act. *Mot. for an Order Authorizing Compassionate Release (Section 3582(c)(1)(A))* (ECF No. 178). On May 25, 2021, the Court appointed Attorney Jamesa Drake to represent Mr. Sanford. *Appointment of Counsel & Scheduling Order* (ECF No. 181). On July 15, 2021, Attorney Drake filed an amended motion for compassionate release on behalf of Mr. Sanford. *Am. Mot. for Compassionate Release* (ECF No. 187) (*Def.'s Mot.*). On July 20, 2021, the Government responded in opposition to Mr. Sanford's amended motion. *Gov't's Opp'n to Def.'s Am. Mot. for Compassionate Release* (ECF No. 188) (*Gov't's Opp'n*). Mr. Sanford filed a reply to the Government's response on July 25, 2021. *Sanford's Reply Regarding Compassionate Release* (ECF No. 189) (*Def.'s Reply*).

## II.   THE PARTIES' POSITIONS

### A.   David Sanford's Motion and Amended Motion

In his amended motion for compassionate release Mr. Sanford asks this Court to "reduce his sentence to time served, and amend the conditions of supervised release to provide that within three days of his release from the custody of the Bureau of Prisons (BOP), or at another time specified by his probation officer, he attend 12 months of in-patient treatment for alcohol and substance abuse at the Western Massachusetts Recovery and Wellness Center, at the government's expense." *Def.'s Mot.* at 2. Mr. Sanford "has, on his own initiative and in recognition of the seriousness of his problem, found a residential treatment program run by the Hampden County,

Massachusetts Sheriff's Department, that he would prefer to attend." *Def.'s Mot.* at 1-2.

As of May 25, 2021, Mr. Sanford, currently at the Big Sandy BOP facility in Kentucky, had served 89.4 percent of his two hundred-forty-month sentence. *Restricted U.S. Probation Filing* (ECF No. 180). Mr. Sanford characterizes his time in prison as a "decidedly mixed bag." *Def's Mot.* at 7. While he "has availed himself of many educational opportunities, he has also continued to use illegal substances and to incur disciplinary infractions." *Id.* Mr. Sanford argues that his challenges in prison "strongly militate in favor of this Court's intervention now, and [his] placement in a 12-month residential treatment facility." *Id.*

Specifically, Sanford argues that "this Court may grant compassionate release on any basis that it determines to be extraordinary and compelling," and his "long struggle with substance abuse disorders and his urgent need for significant intervention and treatment" provide appropriate circumstances for such intervention. *Id.* at 8. He asserts that "[c]ompassionate release from prison is not only for inmates of advanced age, those who suffer from physical infirmity, or those for whom the risk of covid-19 related complications are high," reasoning that "the statutory criteria are not limited to these preconditions." *Id.*

Mr. Sanford "does not claim that his physical health is a reason to grant this motion." *Id.* at 9. While Mr. Sanford, who is fifty years old, unfortunately sustained several injuries while in prison and suffers from hepatitis C, records indicate that his health is currently stable and that he has received both doses of the Pfizer COVID-

7

19 vaccine.  *Id.*  Mr. Sanford instead emphasizes that "he suffers from a very serious condition nonetheless: he has a long and well-documented history of severe drug use," which he links to his history of trouble with the law and the "instant crimes of conviction" for the OxyContin robbery.  *Id.* at 10.

In addressing the 18 U.S.C. § 3141(g) dangerousness factors to be balanced in a request for compassionate release, Mr. Sanford acknowledges that his "criminal history and the nature and circumstances of the offenses in question unambiguously militate in favor of a dangerousness determination," but he argues that his impending release "substantially mitigate[s]" such concerns.  *Id.* at 15.  Mr. Sanford contends that, since he is "scheduled to be released in just over a year," the "salient issue is how best to ensure against recidivism." *Def.'s Mot.* at 15-16.  Thus, Mr. Sanford urges the Court to focus on the recidivism factor, contending that "the best way to ensure that he does not recidivate – and thus, to protect the community – as well as to try and get David the help that he sorely needs, is to require him to report now to an intensive in-patient treatment program." *Id.* at 16.  Mr. Sanford also contends that the "history and characteristics of the person" factor contemplates Mr. Sanford's "history relating to drug or alcohol abuse" and thus weighs in favor of granting his request for compassionate release.  *Id.* at 20 (quoting 18 U.S.C. § 3142(g)(3)(A)-(B)).

Finally, Mr. Sanford asserts that the Court should deem his "substance abuse disorder" an extraordinary and compelling reason to grant compassionate release "pursuant to the catch-all 'other reasons' category in 1B1.13 cmt. n.1(D), or pursuant to 18 U.S.C. § 3142(g)(3)(B)." *Id.* at 21.  He further argues that the U.S.S.G § 1B1.13

policy statements, which have not been updated since the 2018 First Step Act amended 18 U.S.C. § 3582(c)(1)(A), may be "helpful" but "do not constrain this Court's independent assessment of whether 'extraordinary and compelling' reasons warrant a sentence reduction." *Id.* Mr. Sanford alternatively reasons that even if the 1B1.13 policy statements do apply to petitioner-brought motions, "a court may find extraordinary and compelling reasons unrelated to the defendant's physical health or age which justify the grant of compassionate release." *Id.* at 22-23 (citing U.S.S.G § 1B1.13 cmt. n.1(D)).

As to his specific request that the Court "order his participation in the Western Massachusetts Recovery and Wellness Center" (WMRWC), Mr. Sanford argues that "the text of the compassionate release statute" provides "authorization for a court . . . to sentence a defendant to a period of supervised release with the condition that, *inter alia*, he attend a specific program directed at treating substance use disorders." *Id.* at 25. He asks the Court to exercise its authority under 18 U.S.C.§ 3582(c)(1)(a) to "order, as a condition of supervised release, that a defendant live at a particular location." *Id.* at 23. Mr. Sanford explains that he "has no support system in place in Maine" but that "he has a full and willing support network" of family members, evidenced by their letters of support, in the same Massachusetts community as his requested placement. *Id.* at 26. Mr. Sanford concludes by asking the Court to "reduce his sentence to time-served and order him to report to the WMRWC as a condition of his supervised release," noting that he would still have "roughly five years of additional supervised release, during which time he can continue to work on

9

maintaining sobriety at the direction of his probation officer and in a very structured way." *Id.* at 26-27.

Specifically, Mr. Sanford suggests that the Court's intervention is necessary because "BOP's drug awareness program" "has not solved his problems with addiction." *Id.* at 14. Although BOP approved Sanford for half-way house placement where he "will receive some treatment and counseling," he "worries that this will not be enough." *Id.* at 14.

**B.    The Government's Opposition**

The Government urges the Court to deny Mr. Sanford's motion, "because the defendant poses a danger to the public and the 3553(a) sentencing factors do not weigh in favor of his" compassionate release. *Gov't's Opp'n* at 5. The Government concedes that Mr. Sanford has "exhausted his administrative remedy" by filing "a request for reduction in sentence to the warden and receiving a denial." *Id.* at 5 n.6. Regarding extraordinary and compelling reasons for compassionate release, the Government argues that while "there is no doubt the defendant has a long history of substance abuse and use," *id.* at 5, his prison disciplinary record and failure to fully avail himself of drug treatment and education programming, namely the opportunity to participate in the "most intensive treatment program offered by BOP," the nine-month, 500-hour Residential Drug Abuse Program (RDAP), weigh against granting his release to a Residential Re-entry facility of his choosing now. *Id.* at 6-7.

The Government points to BOP records recounting that "Sanford has now been given three opportunities to participate in RDAP, not including the instance in which

. . . [he was] not able to move into the unit due to serving time in disciplinary segregation." *Id.*, Attach. 4, *Bureau of Prisons Psych. Services Admin. Contact with an Inmate*, at 2. According to the Government, "[t]he defendant's consistent refusal to participate in substance abuse treatment while incarcerated undermines his assertion that extraordinary and compelling reasons exist to warrant his release from prison to address those very same issues." *Id.* at 7. The Government asserts that "even if [Mr. Sanford's] case were exceptional, he fails to meet his burden in showing that a reduction of sentence would be appropriate in light of the continuing danger he poses to the community." *Id.* at 1.

The Government next contends that the 18 U.S.C. § 3553(a) factors do not support release. *Id.* at 7-10. The Government highlights Mr. Sanford's extensive criminal history and his disciplinary record while incarcerated. *Id.* The Government notes that Mr. Sanford "began committing crimes at the age of 14, and his crimes range from motor vehicle offenses to larceny to drug trafficking to crimes of violence." *Id.* at 7. The Government identifies Mr. Sanford's prison disciplinary records recounting "phone abuse, destroying property, threatening bodily harm to a prison guard, giving and accepting money, directing money to be sent to another, mail abuse, possessing a dangerous weapon (a knife), and attempting to assault another inmate." *Id.* at 7-8.

Turning to the nature and circumstances of the offense and the need to protect the public from future crimes, the Government urges the Court to conclude that Mr. Sanford "would pose a danger to the community if released," recounting the Court's

characterization of the offense as "a terrible trilogy of drugs, firearms, and robbery," reflecting "prior planning." *Id.* at 8 (quoting *Sentencing Tr.* at 24:16-21). In addition, the Government says that "given the defendant's past criminal record and his disciplinary record while incarcerated, releasing the defendant now would not sufficiently deter him from future criminal conduct." *Id.* at 9. Finally, the Government insists that while Mr. Sanford has "served a substantial portion of his sentence . . . releasing the defendant now because he wants to attend inpatient treatment after repeatedly refusing the offers of drug treatment while incarcerated does not reflect the seriousness of the offense, promote respect for the law, or provide just punishment." *Id.* The Government requests that the Court deny Mr. Sanford's motion "with prejudice because [he] has not met his burden of establishing that a sentence reduction is warranted under the statute." *Id.* at 1.

### C.   David Sanford's Reply

Mr. Sanford disputes the Government's contention that his "refusal to participate in [the RDAP residential drug abuse program, BOP's most intensive drug treatment] militates against a finding of extraordinary and compelling circumstances." *Def.'s Reply* at 2. Mr. Sanford "believe[s] that an inherently stressful prison setting, with easy access to drugs, is not conducive — for him — to effective drug and alcohol treatment." *Id.* at 5. He frames his petition as seeking "more help than the BOP can provide," alleging that his request that the Court "order him to spend the next twelve months under the close supervision of law enforcement

personnel" speaks to the sincerity of his efforts to obtain effective substance abuse treatment. *Id.* at 4.

In response to the Government's conclusion that Mr. Sanford poses a danger to the community if granted compassionate release, Sanford maintains that because he "is returning to the community in short order, even if this Court denies" his petition, "promoting [Mr. Sanford's] sobriety is the best way to help both [him] and the community." *Id.* at 6.  Mr. Sanford also disputes the Government's contention that his compassionate release would "not sufficiently deter him from future criminal conduct" and would "not reflect the seriousness of the offense, promote respect for the law, or provide just punishment." *Gov't's Opp'n* at 9.  In response, Mr. Sanford emphasizes that he has "served nearly 90% of his lengthy prison sentence," that his disciplinary record reflects that "he has been punished adequately" and that "allowing him to spend the remaining *months* of his sentence in a treatment facility run by law enforcement personnel does not allow him to skirt the law or avoid responsibility." *Def.'s Reply* at 7 (emphasis in original).

Finally, Mr. Sanford submits that if the Court "is inclined to deny [his] motion, then it should do so *without* prejudice," reasoning that "even if the present circumstances do not give rise to extraordinary and compelling reasons to grant compassionate release, future circumstances might" under the "responsive" statute. *Id.* (emphasis in original).

## III.   LEGAL STANDARD

The Court has addressed the legal standard for deciding a motion for compassionate release on numerous occasions. *See, e.g.*, *United States v. Crosby*, No. 1:17-cr-00123-JAW-01, 2020 U.S. Dist. LEXIS 199085, at *16-23 (D. Me. Oct. 27, 2020). Put succinctly, 18 U.S.C. § 3582(c)(1)(A)(i) permits a court to modify a term of imprisonment when (1) "extraordinary and compelling reasons warrant" the movant's release, (2) release is consistent with "the factors set forth in [18 U.S.C. §] 3553(a)," and (3) release comports with "applicable policy statements issued by the Sentencing Commission . . . ." 18 U.S.C. § 3582(c)(1)(A); *United States v. Saccoccia*, No. 20-2045, 2021 U.S. App. LEXIS 24679, at *5, 13-15 (1st Cir. Aug. 18, 2021).[4]

If the prisoner meets the extraordinary and compelling circumstances standard necessary to justify compassionate release, before granting the petition, courts must still apply the 18 U.S.C. § 3553(a) factors to assess,

> [t]he nature and circumstances of the offense and the history and characteristics of the defendant, the need . . . to reflect the seriousness

---

[4]     The United States Sentencing Commission issued a policy statement under United States Sentencing Guideline § 1B1.13 for addressing compassionate release motions brought by the Director of the Bureau of Prisons under § 3582(c)(1)(A). However, "[t]he Sentencing Commission promulgated this policy statement before the emergence of the COVID-19 pandemic and before the changes to § 3582 put in place by the FIRST STEP Act." *Crosby*, 2020 U.S. Dist. LEXIS 199085, at *20 n.1. In *Saccoccia*, 2021 U.S. App. LEXIS 24679, at *13-15, the First Circuit addressed § 1B1.13 in the context of the First Step Act and, after noting that "the Sentencing Commission's current policy guidance predates the F[irst] S[tep] A[ct]" and "addresses the compassionate release process as one instituted by motion of the BOP," the First Circuit observed that the argument that § 1B1.13 is not an "applicable" policy statement constraining the courts "has been viewed approvingly by the overwhelming majority of courts of appeals that have passed on the issue." *Id.* (collecting cases). In *Saccoccia*, the First Circuit declined to resolve this issue because it was not necessary to do so. *Id.* Nevertheless, the First Circuit assumed, "for argument's sake, that a court adjudicating a prisoner-initiated motion for compassionate release may go beyond the confines of the Sentencing Commission's current policy guidance . . . in determining whether a particular circumstance or set of circumstances constitutes an extraordinary and compelling reason to grant the motion." *Id.* at *15. The Court views *Saccoccia* as consistent with the District's earlier expressed conclusion that even though § 1B1.13 "'provides helpful guidance,'" it is "'not ultimately conclusive given the statutory change.'" *United States v. Rembert*, No. 2:12-cr-66-DBH, 2020 U.S. Dist. LEXIS 210841, at *1 (D. Me. Nov. 11, 2020) (quoting *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019), *aff'd* No. 19-1785 (1st Cir. July 23, 2020)).

of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; [and] to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). "Though the section 3553(a) factors may serve as an independent basis for a district court's decision to deny a compassionate-release motion," they "need only be addressed if the court finds an extraordinary and compelling reason favoring release." *Saccoccia*, 2021 U.S. App. LEXIS 24679 at *16-17.

The movant bears the burden of proving that he is entitled to a sentence reduction, and "the Court has broad discretion in deciding whether to grant or deny a motion for sentence reduction." *United States v. Curtis*, No. 1:14-cr-00140-JAW, 2020 U.S. Dist. LEXIS 102045, at *12 (D. Me. June 11, 2020) (quoting *United States v. Britton*, 473 F. Supp. 3d 14, 16 (D.N.H. 2020) (internal citations omitted)); *see Saccoccia*, 2021 U.S. App. LEXIS 24679 at *6 (stating that the First Circuit's standard of review "[r]ecogniz[es] that the compassionate-release statute provides that a district court's decision to grant or deny a compassionate-release motion is discretionary").

## IV.   DISCUSSION[5]

### A.   Extraordinary and Compelling Reasons

---

[5]   18 U.S.C. § 3582(c)(1)(A) contains an administrative exhaustion requirement that bars some compassionate release motions as untimely. *United States v. Cain*, No. 1:16-cr-00103-JAW-1, 2021 U.S. Dist. LEXIS 20672, at *9-10 (D. Me. Feb. 3, 2021). However, the Government may waive or concede exhaustion. *Id.* at *10. Here, the Government conceded that Mr. Sanford complied with the exhaustion requirement and the Court therefore considers Mr. Sanford's motion on the merits. *Gov't's Opp'n* at 5 n.6.

To grant Mr. Sanford's motion under 18 U.S.C. § 3582(c)(1)(A)(i), the Court must find "extraordinary and compelling reasons warrant[ing]" a reduction in sentence.  Mr. Sanford contends that his struggle with substance abuse constitutes an extraordinary and compelling reason for his release.  He submits that the "statutory criteria are not limited to . . . preconditions" such as "physical infirmity," special COVID-19 risk factors, or "advanced age," and urges the Court to "grant compassionate release on any basis that it determines to be extraordinary and compelling."  *Def.'s Mot.* at 8.

The Court reviewed Mr. Sanford's account of mental health and substance abuse challenges.  Again, as at sentencing, the Court acknowledges the tragic abuse that Mr. Sanford suffered as a child, which he recounts as a "root cause of [his] drug and alcohol problems," and recognizes Mr. Sanford's expressions of remorse for the crimes of conviction.  *See Sentencing Tr.* at 17-19.  Mr. Sanford presents his "criminal history leading up to the instant offense" as "the picture of a young man struggling with addiction."  *Def.'s Mot.* at 10.  The Court specifically recommended at sentencing that "the Bureau of Prisons . . . consider [Mr. Sanford] for enrollment in the 500-hour drug and alcohol rehabilitation treatment course [RDAP]."  *Tr. of Proceedings* at 26:16-19.  While in prison Mr. Sanford completed BOP's Drug Education program and "availed himself of many educational opportunities," but he declined multiple opportunities to participate in RDAP.  *Def.'s Mot.* at 7; *Def.'s Reply* at 2; *Gov't's Mot.* at 6.

Although the Court recognizes that "[a] person can genuinely want help, and want to receive it from one source over another," Mr. Sanford's preference of a "new setting" and desire for alternative offerings to the BOP's substance abuse programming do not constitute extraordinary and compelling reasons to justify his release. *Def.'s Reply* at 5.  The Court takes as a given that an inmate faced with an alternative of drug treatment in prison or on release would virtually always opt for release.  But Mr. Sanford's reasons for refusing BOP's RDAP, namely that he believes the in-prison setting would be inherently stressful and he would have access to drugs while in custody, ring hollow.  Outside residential treatment programs are not stress-free, and the outside world is not drug-free.

Regretfully, the Court cannot conclude that Mr. Sanford's history of substance abuse satisfies the "extraordinary and compelling" standard of § 3582(c)(1)(A)(i).  It is unfortunate, but true, that many, though not all, federal inmates have issues with substance abuse, some with addiction issues as profound and refractory as Mr. Sanford's.  To conclude that Mr. Sanford's addiction is extraordinary and compelling would be to conclude that a substantial percentage of the federal prison population would meet the extraordinary and compelling standard, turning the ordinary into the extraordinary, a result inconsistent with the plain language of the statute.

Mr. Sanford acknowledges that he has "a long and well-documented history of severe drug use," *Def.'s Mot.* at 10, but rather than accept the most intensive drug treatment program the BOP offers, he has placed his own conditions on the type of drug treatment program he will accept.  As RDAP has been successful with other

inmates, the Court wonders about Mr. Sanford's sincerity in informing the Court that he needs treatment but only the treatment he deems best. It seems that a person like Mr. Sanford with profound drug addictions that have caused him untold personal difficulties would accept treatment from any source, including the BOP. If Mr. Sanford had tried RDAP, failed, and sought a new treatment program, it would be one thing. But Mr. Sanford has not even tried the BOP's premier treatment program and, according to the record, he has refused RDAP three times.

In *Saccoccia*, the First Circuit upheld the district court's assessment that the petitioner's "not developed" health concerns, for which the BOP had made "reasonable efforts" to provide care, were not an extraordinary or compelling justification. 2021 U.S. App. LEXIS 24679, at *11-12. The First Circuit contrasted the *Saccoccia* petitioner's situation with one that would potentially justify compassionate release, involving "material BOP interference in or stonewalling of medical testing or treatment." *Id.* The First Circuit further explained that a petitioner alleging extraordinary and compelling health reasons to justify release would need to present more than a diagnosis "standing alone," as the district court's discretionary balancing "would depend on a constellation of other factors, including the BOP's ability to treat such an illness within the federal prison system." *Id.* at 11 n.5. Where Mr. Sanford has had access to support and treatment services while in prison for the substance abuse challenges that underly his petition, and does not allege other special circumstances contemplated by 18 U.S.C. § 3582(c)(1)(A) or related to the COVID-19 pandemic, the Court concludes that Mr. Sanford fails to show extraordinary and

compelling reasons to justify his release. This finding is sufficient to deny Mr. Sanford's motion for compassionate release.

### B.    The Section 3553(a) Factors

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the Court has also considered whether the 18 U.S.C. § 3553(a) factors favor Mr. Sanford's release. They do not. Although the Court considered each factor, it finds the need for specific deterrence, the nature and circumstances of Mr. Sanford's offense, and the need to protect the public are the most pertinent considerations in Mr. Sanford's case.

As for specific deterrence, in addition to the offense-of-conviction, Mr. Sanford has numerous prior convictions, going back to his teenage years. *PSR* ¶¶ 28-62. A survey of Mr. Sanford's history reveals drug related and violent crimes including: (1) assault by a dangerous weapon at age 19, *id.* ¶ 36; (2) possession of cocaine with intent to distribute at age 24, *id.* ¶ 43; and (3) larceny from a person following an assault and attempted robbery at age 26. *Id.* ¶ 45. It is apparent that Mr. Sanford's prior encounters with the criminal justice systems in Massachusetts and Maine, including stints in state prison, did not deter his continuing criminal conduct. *Id.* ¶ 28-62; *Sentencing Tr.* at 24:1-12. While in prison, Mr. Sanford's disciplinary reports recount: use and possession of drugs and alcohol, introduction of drugs and alcohol, destroying property, assault without serious injury, and threatening bodily harm, among other infractions. *Restricted U.S. Probation Filing* at 1-2. Although the Court agrees that it is critical that Mr. Sanford participate in substance abuse treatment to mitigate recidivism and community safety risks, his infractions while incarcerated

give the Court considerable pause about his risk of recidivism when released. The Court concludes that the need for adequate deterrence weighs strongly against Mr. Sanford's immediate release.

The Court also considered the nature and circumstances of this offense and the need to protect the public. Mr. Sanford's crime was manifestly serious and, in the Court's view, deserves considerable punishment, notwithstanding the fact that Mr. Sanford has already served most of his sentence. The Court also recognizes the need to protect the public from Mr. Sanford, whose involvement in "a particularly heinous and grave crime," an armed robbery in furtherance of the trafficking of prescription drugs, significantly impacted a small Maine community. *Sentencing Tr.* at 24:14-15. Thus, on balance, the 18 U.S.C. § 3553(a) factors do not support Mr. Sanford's release. While Mr. Sanford describes sincere personal challenges he wishes to address in a residential treatment program setting, "'[m]erely raising potentially mitigating factors does not guarantee' a favorable decision" under the discretionary balancing of factors to warrant compassionate release. *Saccoccia*, 2021 U.S. App. LEXIS 24679 at *19 (quoting *United States v. Davila-Gonzalez*, 595 F.3d 42, 49 (1st Cir. 2010)). As the First Circuit has emphasized, "compassionate release motions should not devolve into satellite sentencing hearings." *Id.* at *21 (noting, "in the analogous [§]3582(c)(2) context," the Supreme Court's explanation that "a sentence modification . . . is 'not a plenary resentencing proceeding'") (quoting *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1967 (2018)).

## C.    Summary

The Court concludes that Mr. Sanford has not met his burden to show extraordinary and compelling reasons for his release and furthermore that the section 3553(a) factors do not support release. Given the need for deterrence, the nature and circumstances of the offense, and the need to protect the public, releasing Mr. Sanford early would contravene the 18 U.S.C. § 3553(a) factors.

The Court recalls Mr. Sanford from the sentencing hearings in 2004 and wishes him the best. Then as now, the Court has been impressed that Mr. Sanford "has a good head on [his] shoulders," and has "every potential to contribute to society if [he] wish[es] to do so." *Sentencing Tr.* at 26:6-9. The Court hopes Mr. Sanford will achieve long-term recovery from his struggles with substance abuse and will return to society a productive and law-abiding citizen. In their letters of support, Mr. Sanford's family members expressed their commitment to support him on this path and their belief that Mr. Sanford can change his life for the better. *Def.'s Mot.*, Attachs. 3-6, *Letters from Lois M. Sanford, Megan Stopa, Sarah Lindsay, and Lisa Corbin.* However, on the record before the Court, Mr. Sanford is not an appropriate candidate for compassionate release.

## V.   CONCLUSION

The Court DISMISSES without prejudice David Sanford's Amended Motion for Compassionate Release (ECF No. 187).

SO ORDERED.

                              /s/ John A. Woodcock, Jr.
                              JOHN A. WOODCOCK, JR.
                              UNITED STATES DISTRICT JUDGE

Dated this 23rd day of September, 2021.